IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL SCHMIDT, DANIEL FISHER, and GLENN WHITE, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 14 C 9112 |
| v. | ) ) | Judge Amy J. St. Eve |
| VILLAGE OF GLENWOOD, ILLINOIS, *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

**ORDER**

The Court grants in part without prejudice and denies in part Defendants' motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) [30]. Plaintiffs' Second Amended Complaint is due on or before July 15, 2015. Status hearing set for August 4, 2015 is stricken and reset to July 20, 2015 at 8:30 a.m.

**STATEMENT**

On March 12, 2015, Plaintiffs Paul Schmidt, Daniel Fisher, and Glenn White filed a five-count First Amended Complaint against Defendants Village of Glenwood ("Glenwood" or the "Village"), Illinois; Kerry Durkin, the Mayor of Glenwood; and Demitrous Cook, Glenwood's Chief of Police. In the First Amended Complaint, Plaintiffs allege a claim under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq*. (Count I), a First Amendment retaliation claim under 42 U.S.C. § 1983 (Count II), an equal protection claim under 42 U.S.C. § 1983 (Count III), and reverse discrimination claims based on 42 U.S.C. §1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.* (Counts IV and V). Before the Court is Defendants' Rule 12(b)(6) motion to dismiss Counts II through V of the First Amended Complaint. For the following reasons, the Court grants in part without prejudice and denies in part Defendants' motion. The Court grants Plaintiffs leave to file a Second Amended Complaint in accordance with this ruling. Plaintiffs' Second Amended Complaint is due on or before July 15, 2015.

**BACKGROUND**

Defendant Glenwood employs Plaintiffs Schmidt, Fisher, and White, who are white males, as patrol police officers. (R. 25, First Am. Compl. ¶¶ 6, 9, 12, 15.) On or about May 7, 2013, the Village promoted three patrol police officers other than Plaintiffs to the rank of Sergeant. (*Id.* ¶¶ 50, 51.) Plaintiffs allege that, at that time, they were all in good standing with the Village and the labor union, the Metropolitan Alliance of Police, Chapter No. 612 ("MAP

#612"). (*Id.* ¶¶ 22, 23.) In addition, Plaintiffs Fisher and White served as MAP #612's Recording Secretary and President, respectively. (*Id.* ¶¶ 25, 26.) Plaintiffs also claim that they were eligible for promotion from the rank of patrolman to Sergeant during the relevant time period. (*Id.* ¶ 22.) According to Plaintiffs, the Village denied their promotions because Plaintiffs engaged in protected speech and actions against their employer's promotional process. (*Id.* ¶¶ 71, 73.) Plaintiffs further allege that Glenwood subjected them to race-based discrimination by depriving them of the promotion to the rank of Sergeant. (*Id.* ¶¶ 79, 90.)

Glenwood maintains a list of patrolmen eligible for promotion to Sergeant ("Sergeant's List") according to the policies and procedures of the Village and the Collective Bargaining Agreement between the Village and MAP #612. (*Id.* ¶ 27.) Prior to expiration of a Sergeant's List, the Village traditionally conducts a promotional examination and interviews to create an updated Sergeant's List. (*Id.* ¶ 31.) The Board of Fire and Police Commissioners of the Village ("BFPC") outlines the promotional examination process in its Rules and Regulations ("BFPC Rules & Regulations"). (*Id.* ¶ 28.) According to the BFPC Rules & Regulations, the promotional examination score is determined by the following three components: (1) written test score (45%), (2) oral test score (45%), and (3) merit and efficiency score, commonly known as "Chief's Points" (10%). (*Id.* ¶¶ 28, 29.) In addition, BFPC Rules & Regulations require Glenwood to make all promotions by selecting the three individuals with the highest rating, which in this case is based on their promotional examination and seniority scores. (*Id.* ¶ 28.)

Defendant Demitrous Cook, an African-American and the Chief of Police for the Glenwood Police Department, created a productivity measuring system for calculating the Chief's Points portion of the promotional examination. (*Id.* ¶¶ 18, 33.) Cook first collected productivity data for all officers completing the promotional examination. (*Id.* ¶ 36.) Cook then calculated an average score and awarded 10 Chief's Points to each officer whose productivity score was above the average and zero points to each officer whose productivity score was below the average. (*Id.* ¶ 37.) Defendants Cook and Kerry Durkin, Glenwood's Mayor, exercised final authority in determining and implementing the Chief's Points portion of the promotional exam. (*Id.* ¶¶ 17, 34.) Plaintiffs allege that Cook and Durkin designed the system of awarding Chief's Points based on race, rather than merit. (*Id.* ¶ 35.)

On or after December 1, 2012, the Village administered a promotional examination to create a new eligibility list for the rank of Sergeant. (*Id.* ¶¶ 31, 32.) Cook awarded zero Chief's Points to all three Plaintiffs. (*Id.* ¶ 39.) On or about January 29, 2013, the Village posted the results of the examination. (*Id.* ¶ 44.) Plaintiffs allege that prior to posting the results, Cook and/or Durkin made statements relating to "a need to have some black Sergeants" and other similar comments. (*Id.* ¶ 42.) Plaintiffs also allege that Cook expressed an interest in having more African-American supervisory officers in the police department. (*Id.* ¶ 43.) Several months later, the Village promoted three patrol officers to the rank of Sergeant from the list posted on or about January 29, 2013. (*Id.* ¶ 50.) Two of the three officers promoted to the rank of Sergeant were African-American and none of the Plaintiffs were promoted to the rank of Sergeant. (*Id.* ¶¶ 51, 86.)

Plaintiffs Fisher and White allege that Defendants knowingly deprived them of the opportunity to be promoted to the rank of Sergeant because of their protected speech and actions.

(*Id.* ¶¶ 73, 74.) Fisher and White specifically contend that as the union's representatives, they sought redress before the Illinois Labor Relations Board regarding the Village's promotional process, including the system of determining Chief's Points. (*Id.* ¶¶ 67, 71.) Also, Fisher and White objected to the Village's terms on a successor collective bargaining agreement and demanded arbitration to resolve the impasse. (*Id.* ¶ 72.) Fisher and White claim that their speech is a matter of public concern because the promotional process of police officers directly affects the public safety of the Village. (*Id.* ¶ 68.) Also, Plaintiffs Fisher and White contend that Cook designed the system of awarding "Chief's Points" to promote officers on a racial basis, which is also of public concern. (*Id.* ¶ 69.)

Plaintiffs Schmidt, Fisher, and White further allege that they belong to a vulnerable class of public employees who spoke out or took action on matters of public concern. (*Id.* ¶ 79.) Plaintiffs maintain that the Village treated them unjustly and unreasonably based on their membership in the class and based on their race. (*Id.* ¶¶ 79, 82.) According to Plaintiffs, Defendants manipulated the promotional process to ensure the promotion of African-American candidates rather than Plaintiffs. (*Id.* ¶ 84.) Moreover, Plaintiffs assert that Defendants intentionally and arbitrarily discriminated against them, motivated by a purpose to increase the number of African-American Sergeants. (*Id.* ¶¶ 81, 85.) Based on these allegations, Plaintiffs seek promotion to the rank of Sergeant, back-pay, compensatory damages, and attorney's fees and costs.

## LEGAL STANDARD[1]

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true, *Alam v. Miller Brewing Co.,* 709 F.3d 662, 665-66 (7th Cir. 2013), and draw "reasonable inferences in favor of the plaintiffs." *Teamsters Local Union No. 705 v. Burlington No. Santa Fe, LLC,* 741 F.3d 819, 823 (7th Cir. 2014). In addition, "complaints need not anticipate affirmative defenses", and "neither *Iqbal* nor *Twombly* suggests otherwise." *Levin*

---

[1] Plaintiffs set forth the wrong legal standard for a Rule 12(b)(6) motion to dismiss using verbiage similar to the "no set of facts" language that originated in *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In 2007, the United States Supreme Court unequivocally rejected this language when retooling the federal pleading standards. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 563, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ("after puzzling the profession for 50 years, this famous observation has earned its retirement").

*v. Miller,* 763 F.3d 667, 671 (7th Cir. 2014); *see also Sidney v. Hillman Health Ctr. of Rochester v. Abbott Labs.,* 782 F.3d 922, 928 (7th Cir. 2015).

**ANALYSIS**

I.      **First Amendment Claim**

In Count II of the First Amended Complaint, Plaintiffs Fisher and White allege a First Amendment retaliation claim based on their public employment with Glenwood. To establish a prima facie case of First Amendment retaliation, a public employee must show that: (1) his speech was constitutionally protected; (2) he suffered a deprivation as a result of his protected speech that was sufficiently adverse to deter the exercise of free speech; and (3) his speech was a substantial or motivating factor in the employer's decision. *See Graber v. Clarke,* 763 F.3d 888, 894–95 (7th Cir. 2014); *Kidwell v. Eisenhauer,* 679 F.3d 957, 964 (7th Cir. 2012). Although making a "prima facie case" is an evidentiary requirement and not a pleading standard, *see Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), this requirement lends guidance to the Court's determination whether Plaintiffs have sufficiently alleged their First Amendment retaliation claim under *Twombly* an *Iqbal*.

In the present motion to dismiss, Defendants argue that Plaintiffs have failed to allege sufficient facts that their speech was constitutionally protected, namely, that their speech related to a matter of public concern. *See Garcetti v. Ceballos,* 547 U.S. 410, 421, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006); *Meade v. Moraine Valley Cmty. College,* 770 F.3d 680, 684 (7th Cir. 2014). In order for a public employee's speech to be constitutionally protected, the employee must have been speaking (1) as a private citizen, (2) on a matter of public concern, and (3) the employee's interest in expressing such speech must outweigh the interest of the state in promoting effective and efficient public service. *See Lalowski v. City of Des Plaines,*___F.3d ___, 2015 WL 3756412 (7th Cir. June 17, 2015); *Swetlik v. Crawford,* 738 F.3d 818, 825 (7th Cir. 2013); *Houskins v. Sheahan,* 549 F.3d 480, 490 (7th Cir. 2008).

The Supreme Court in *Garcetti* clarified that public employees who speak "pursuant to their official duties" are not speaking as private citizens, but as employees whose communications are not protected from employee discipline on First Amendment grounds. *Garcetti,* 547 U.S. at 421. In determining whether a public employee is speaking as an employee or as a citizen, the "proper inquiry must be a practical one" that considers whether speech is part of the employee's "daily professional activities." *Chrzanowski v. Bianchi,* 725 F.3d 734, 738-39 (7th Cir. 2013) (quoting in part *Garcetti,* 547 U.S. at 424, 422) (quotation marks omitted). The Seventh Circuit has consistently held that public employees who speak on behalf of the union they represent are not speaking "pursuant to their official duties." *Olendzki v. Rossi*, 765 F.3d 742, 747 (7th Cir. 2014).

The Court first turns to whether Plaintiffs' allegations indicate that they were speaking as employees or private citizens. Here, Fisher and White specifically allege that they disagreed with the promotional process and objected to the system of awarding Chief's Points on behalf of the union they represent. Viewing Plaintiffs' allegations and all reasonable inferences as true, Fisher and White were speaking in their capacity as union officials, rather than as public

employees. *See Nagle v. Village of Calumet Park,* 554 F.3d 1106, 1123 (7th Cir. 2009); *Fuerst v. Clarke,* 454 F.3d 770, 774 (7th Cir. 2006).

Next, in determining whether Plaintiffs' speech is a matter of public concern, the Court must consider its content, form, and the context in which it was spoken. *See Connick v. Myers,* 461 U.S. 138, 147-48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Meade*, 770 F.3d at 684. A matter of public concern "is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *San Diego v. Roe,* 543 U.S. 77, 83-84, 125 S.Ct. 521, 160 L.Ed.2d 410 (2004) (per curiam). As the Supreme Court explains, "[w]hen employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Connick,* 461 U.S. at 146. While the content of the speech is the most important factor, an employee's speech implicating a matter of public concern does not automatically warrant protection because the individual's motive must also be considered. *See Bivens v. Trent*, 591 F.3d 555, 560-61 (7th Cir. 2010). To clarify, even if the content of the speech concerns a subject of public interest, the First Amendment will not protect speech if its only purpose was to "further some purely private interest" or "if the *expression* addresses only the personal effects upon the employee." *Id.* at 561 (emphasis in original).

Fisher and White allege that the content of their claim before the Illinois Labor Relations Board against the Village regarding its unfair labor practices "directly affects the public safety," prompting public concern. Also, Fisher and White assert that the system of awarding Chief's Points was designed to award promotions based on race and not on merit. Fisher and White, however, fail to sufficiently allege enough facts supporting the conclusion that the content of their speech touched on racial discrimination. *See Twombly,* 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level"). On the other hand, Fisher and White have alleged specific facts explaining how the promotional process of police officers directly affects public safety, especially because their jobs concern public safety in the first instance. *See Graber v. Clarke,* 763 F.3d 888, 897 (7th Cir. 2014); *Gustafson v. Jones,* 290 F.3d 895, 907 (7th Cir. 2002).

Regarding the form and context elements of the *Connick* test, Fisher and White have not alleged that their objections to the promotional process were motivated by more than the purely private interest of being promoted to the rank of Sergeant. *See Bivens,* 591 F.3d at 561. More specifically, Fisher and White contend that the speech occurred in the context of negotiations relating to the collective bargaining agreement between the Village and the union for the purpose of resolving unfair labor practices employed by the Village. These allegations concern an employment matter involving Plaintiffs and other officers eligible for promotion to Sergeant. Accordingly, Fisher and White have failed to sufficiently allege that their speech was of general interest or of value to the public. *See Gustafson v. Jones,* 290 F.3d 895, 908 (7th Cir. 2002) ("Motive matters to the extent that even speech on a subject that would otherwise be of interest to the public will not be protected if the expression addresses only the personal effect upon the employee or if the only point of the speech was to further some purely private interest."). In other words, Plaintiffs, whose jobs concern public safety, must speak on matters that affect more than their job conditions or general office policies to state a claim under the First Amendment.

The Court therefore grants Defendants' motion to dismiss Count II without prejudice and grants Plaintiffs leave to file a Second Amended Complaint regarding their First Amendment claim keeping in mind counsel's obligations under Rule 11.

## II.     Reverse Race Discrimination Claims 42 U.S.C. §§ 1981, 1983, and Title VII

In Counts III, IV, and V, Plaintiffs bring reverse race discrimination claims under 42 U.S.C. §§ 1981, 1983, and Title VII. Because "Title VII claims and 42 U.S.C. § 1981 claims incorporate the same liability standard," *see Whitfield v. Int'l Truck & Engine Corp.,* 755 F.3d 438, 442 (7th Cir. 2014), as well as equal protection claims based on reverse discrimination under 42 U.S.C. § 1983, the Court analyzes these three claims together. *See Smith v. Bray,* 681 F.3d 888, 899 (7th Cir. 2012); *Friedel v. City of Madison*, 832 F.2d 965, 971 (7th Cir. 1987). Under the circumstances, Plaintiffs must eventually establish that (1) they are members of a protected class; (2) they were qualified for the applicable positions; (3) the employer did not promote them; and (4) the employer promoted someone outside the protected group who was not better qualified than Plaintiffs. *See Garofalo v. Village of Hazel Crest,* 754 F.3d 428, 439 (7th Cir. 2014). Because none of the individual Plaintiffs allege that they are a racial minority, they ultimately bear the burden of showing that Defendants had a reason or inclination to discriminate against white men or that there is something fishy about the facts at hand. *See Good v. University of Chicago Med. Ctr.,* 673 F.3d 670, 679 (7th Cir. 2012); *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1119 (7th Cir. 2009).

Here, Defendants argue that Plaintiffs have failed to sufficiently allege that Defendants had a reason to discriminate against white men or that there was something fishy about the decision not to promote them. Plaintiffs, however, have alleged that prior to posting the January 2013 promotional list, either Durkin and/or Cook, who Plaintiffs maintain had the final decision-making authority in implementing the Chief's Points portion of the promotional examination, made comments regarding "a need to have black Sergeants" and other similar comments. Plaintiffs also allege that Cook expressed an interest in having more African-American supervisory officers in the police department. Plaintiffs thus contend that Cook awarded them zero "Chief Points" to achieve this goal. Moreover, Plaintiffs allege that Cook and Durkin designed the system of awarding Chief's Points based on race, rather than merit.

Viewing Plaintiffs' allegations and all reasonable inferences in their favor, they have sufficiently alleged that the circumstances surrounding the 2013 Sergeant promotions were fishy and that Defendants had a reason to discriminate against white men that is plausible on its face under the federal pleading standards. *See Iqbal,* 556 U.S. at 679 (whether a claim is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). Defendants' arguments contradicting the alleged facts and concerning the merits of Plaintiffs' claims are best left for summary judgment. The Court therefore denies Defendants' motion in this respect.

## III.    Village of Glenwood's Liability

Next, Defendants argue that Plaintiffs have failed to sufficiently allege facts as to Glenwood's liability for the claims brought under § 1983. *See Monell v. Dep't of Soc. Servs.,*

6

436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To succeed on their constitutional claims against Glenwood, Plaintiffs must show that they (1) suffered a deprivation of a constitutional right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority; (3) which was the proximate cause of their injury. *See King v. Kramer,* 763 F.3d 635, 649 (7th Cir. 2014).

In their First Amended Complaint, Plaintiffs allege that Cook and Durkin exercised final policy-making authority on behalf of the Village in determining and implementing the Chief's Points portion of the promotional exam. Defendants counter that Plaintiffs have nonetheless admitted that the Village, not Cook or Durkin, created and filled the three new Sergeant positions and that the Village administered the promotional examination testing and interview process. *See Vinson v. Vermilion County, Ill.,* 776 F.3d 924, 929 (7th Cir. 2015) ("a plaintiff may plead herself out of court when she includes in her complaint facts that establish an impenetrable defense to her claims"). Plaintiffs, however, also allege that Durkin influenced the Village's decision to create the new Sergeant positions.

Despite the fact that Plaintiffs allege that Durkin influenced the Village's decision to create the 2013 Sergeant positions and that Cook and Durkin employed policy-making authority in awarding Chief Points, any such "cat's paw" theory of liability is not a good fit under *Monell*. *See Waters v. City of Chicago,* 580 F.3d 575, 586 n.2 (7th Cir. 2009) ("Imputing a nondecisionmaker's motive to a municipal employer sounds a lot like respondeat superior liability. Given that well developed § 1983 municipal liability law recognizes delegation and ratification, there seems to be little point in trying to awkwardly fit the cat's paw concept in this area of civil rights law."); *Kibardina v. Board of Tr. of Cmty. Coll. Dist. 508,* No. 14 C 1351, 2015 WL 327356, at *3 (N.D. Ill. 2015) ("cat's paw liability [is] inconsistent with *Monell's* teaching that there is no respondeat superior liability for municipal entities under § 1983.").

Under the circumstances, Plaintiffs have failed to sufficiently allege that a decision-maker with final policy-making authority did not promote them based on race, and therefore, the Court grants Defendants' motion to dismiss without prejudice. The Court also grants Plaintiffs leave to amend their allegations regarding Glenwood's § 1983 liability keeping in mind counsel's Rule 11 obligations.

### IV. Failure to Exhaust

Last, Defendants contend that because Plaintiffs did not challenge the BFPC's January 2013 Sergeant List via the Illinois Administrative Review Law, they are barred from judicial review of the BFPC's creation of the promotional list. *See Slepicka v. Illinois Dept. of Public Health*, 2014 IL 116927, 21 N.E.3d 368, 377, 386 Ill.Dec. 605, 614 (Ill. 2014). The Administrative Review Law states that "[e]very action to review a final administrative decision shall be commenced by the filing of a complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision." 735 ILCS 5/3-103. Although the BFPC is a statutorily created administrative board under Illinois law, *see* 65 ILCS 5/10-2.1-15, Defendants do not explain how the creation of the promotional list is a "final administrative decision" as defined by the Illinois Administrative Review Law. *See* 735 ILCS 5/3-101 ("'Administrative decision' or 'decision'

means any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency.").

      Because it is unclear from the parties' filings whether the creation of the Sergeant's List was a final administrative decision, the Court denies this aspect of Defendants' motion. On a final note, the exhaustion of administrative remedies is an affirmative defense and it is well-settled that a plaintiff does not have an obligation to allege facts negating affirmative defenses under the federal pleading standards. *See Laouini v. CLM Freight Lines, Inc.,* 586 F.3d 473, 475 (7th Cir. 2009); *Salas v. Wisconsin Dept. of Corr.,* 493 F.3d 913, 921 (7th Cir. 2007). Therefore, the Court denies this aspect of Defendants' motion on this basis, as well.

**Dated:** June 24, 2015

                                                **AMY J. ST. EVE**
                                                **United States District Court Judge**